```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE UNITED STATES FOR THE USE AND
BENEFIT OF PACIFIC WESTERN INC.
AND PACIFIC WESTERN INC.,

                    Plaintiffs,           MEMORANDUM AND ORDER
                                          14 CV 4977 (DRH) (AYS)
        - against -

LIBERTY MUTUAL INSURANCE COMPANY
and E & A RESTORATION INC.,

                    Defendant.
-----------------------------------------------------------X
```

**APPEARANCES:**

**SILVERBERG, P.C.**
Attorneys for Plaintiffs
320 Carleton Ave., Suite 6400
Central Islip, NY 11722
By:     Karl J. Silverberg, Esq.

**FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP**
Attorneys for Defendants
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
By:     John Michael Comiskey, Esq.


**HURLEY, Senior District Judge:**

Plaintiffs the United States for the Use and Benefit of Pacific Western Inc. and Pacific Western Inc. ("plaintiff" or "Pacific") bring this action against Liberty Mutual Insurance Company ("Liberty Mutual") and E&A Restoration Inc. ("E&A"), (collectively "defendants") asserting a claim pursuant to 40 U.S.C. § 3131 *et seq.*, "the Miller Act" as well as a state law claim based on consignee liability. Presently before the Court is defendants' motion to dismiss these claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, defendants' motion is granted.

1

# BACKGROUND

The following facts are taken from plaintiff's[1] Second Amended Complaint[2] and are presumed to be true for purposes of defendants' present motion.

The National Park Service, U.S. Department of the Interior, contracted with E&A Restoration as the general contractor to perform improvements at the Sagamore Hill National Historic Site, Oyster Bay, Nassau County, New York ("the Sagamore Hill Project"). For the Sagamore Hill Project, Liberty Mutual, as surety, issued a payment bond with E&A Restoration as the principal, pursuant to which Liberty Mutual agreed to pay any claims by parties who performed work or supplied materials for the Sagamore Hill Project but were not paid by E&A Restoration

According to plaintiff, E&A entered into a subcontract agreement with Soil Stabilization Products Co. Inc. ("SSP"), under which SSP agreed to custom manufacture 80 tons of NaturalPAVE XL Resin Pavement ("NaturalPAVE") for the Sagamore Hill Project. According to plaintiff, "[t]he proposal and contract between [SSP] and E&A Restoration was akin to a subcontract agreement and did not look like a purchase order for general off-the-shelf construction material." (Sec. Amend. Compl. ¶ 21.)

Pacific Western, through contracts with common carriers, transported SSP's material to the Sagamore Hill Project. According to the bill of lading for the transportation of the goods,

---

[1] Although the action is technically brought on behalf of the United States for the Use and Benefit of Pacific Western and Pacific Western, the Court will refer to plaintiff in the singular.

[2] On January 5, 2015, after defendants had already served their motion to dismiss, plaintiff filed a Second Amended Complaint. The Second Amended Complaint was filed pursuant to a stipulation between the parties allowing Pacific to add "United States for the [U]se and Benefit of Pacific Western Inc." as a plaintiff. Given that this was the sole change, the Court has reviewed defendants' motion to dismiss as it applies to the Second Amended Complaint, which is currently the operative pleading in this case.

E&A Restoration was the consignee (recipient of the goods). The delivery was made to the Sagamore Hill Historic Site in two truckloads on September 4, 2013 and September 6, 2013, with a transportation cost of $13,100, which SSP did not prepay. The NaturalPAVE was, however, rejected. Thereafter, Pacific demanded payment for the shipping charges from SSP, but SSP did not pay. Pacific also made claims for the shipping costs to Liberty Mutual pursuant to the payment bond and to E&A as the consignee, but neither party has paid the amount.

## DISCUSSION

### I. *Standard of Review for Motion to Dismiss*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided

3

further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## II. *Plaintiff's Miller Act Claim*

Pacific Western claims that it "is entitled to payment [for its shipping charges] from Liberty Mutual under the payment bond provided to E&A Restoration under the Miller Act . . .

4

in the amount of $13,100 plus interest and attorneys' fees, as allowed for under Pacific Western's contract with [SSP]." (Sec. Amend. Compl. ¶ 33.)

"The Miller Act . . . requires a prime contractor of a federal project to furnish a payment bond to insure payment to individuals who supply labor and/or materials for federal projects." *United States for the Use and Benefit of Conveyor Rental & Sales Co. v. Aetna Casualty & Surety Co.*, 981 F.2d 448, 450 (9th Cir. 1992) (internal quotation marks and citations omitted); *see also U.S. ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 351 (S.D.N.Y. 2014) ("The Miller Act requires any contractor performing on a 'contract of more than $100,000 ... for the construction, alteration, or repair of any public building or public work of the Federal Government' to furnish a 'payment bond with a surety satisfactory to the [contracting federal] officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.' 40 U.S.C. §§ 3131(a)-(b)."). "Although the Miller Act is to be construed liberally, it is limited by a proviso that the payment bond protects only those persons who have a contractual agreement with a prime contractor or subcontractor engaged in a federal project. Persons supplying labor or material to a mere materialman are not protected." *Conveyor Rental & Sales*, 981 F.2d at 450 (internal citations omitted).

Here, Pacific Western had a contractual relationship with SSP to transport the NaturalPAVE. However, it is entitled to protection under the Miller Act only if SSP was a subcontractor of E&A Restoration. Thus, the main issue in dispute is whether or not plaintiff has adequately alleged that SSP is a subcontractor of E&A Restoration, rather than a materialman.

Both parties cite a Ninth Circuit case, *United States for the Use and Benefit of Conveyor Rental & Sales Co. v. Aetna Casualty & Surety Co.*, 981 F.2d 448 (9th Cir. 1992) for the

5

standard in determining whether an entity is a subcontractor. In that case, the court found that the following factors weigh in favor of a subcontractor relationship:

> (1) the product supplied is custom fabricated; (2) the product supplied is a complex integrated system; (3) a close financial interrelationship exists between the companies; (4) a continuing relationship exists with the prime contractor as evidenced by the requirement of shop drawing approval by prime contractor or the requirement that the supplier's representative be on the job site; (5) the supplier is required to perform on site; (6) there is a contract for labor in addition to materials; (7) the term "subcontractor" is used in the agreement; (8) the materials supplied do not come from existing inventory; (9) the supplier's contract constitutes a substantial portion of the prime contract; (10) the supplier is required to furnish *all* the material of a particular type; (11) the supplier is required to post performance bond; (12) there is a backcharge for cost of correcting supplier's mistakes; and (13) there is system of progressive or proportionate fee payment.

981 F.2d at 451-52. On the other hand, the court noted that the following factors weigh in favor of a materialman relationship:

> (1) a purchase order form is used by the parties; (2) the materials come from preexisting inventory; (3) the item supplied is relatively simple in nature; (4) the contract is a small percentage of the total construction cost; and (5) sales tax is included in the contract price.

*Id.* at 452.

Pacific argues that it has sufficiently alleged facts relating to the above-mentioned factors that indicate that SSP is a subcontractor. For example, plaintiff argues that the Complaint sufficiently alleges that SSP performed work on site because it states that SSP's "project manager informed Pacific Western's president, Carter Laurie, that [SSP] sent a technical representative to the Sagamore Hill project to assist E&A Restoration in the NaturalPAVE's installation" and that it was SSP's practice to do so. (Sec. Amend. Compl. ¶ 15.) It does not allege, however, that the technical representative actually came on site or if so, what kind of

6

work he or she performed and the length of the visit. Therefore, it has not sufficiently alleged that this factor is present in this case.

Moreover, plaintiff's attempt to characterize its allegations as supporting the inference that E&A back-charged SSP is unconvincing. While plaintiff alleges that "[a]ccording to an affidavit sworn to by Peter Lacagnina, an E&A Restoration Senior Project Manager, 'E&A . . . reserved the right to assert a claim against [Soil Stabilization] for the amount paid by E&A for the Pavement Mix, together with all additional costs E&A has incurred relating to the remov[al] of the defective Pavement Mix,' " (Sec. Amend. Compl. ¶ 16), these allegations do not seem to encompass what other courts have identified as a "backcharge." *See e.g.*, *Aniero Concrete Co. v. New York City Const. Auth.*, 308 F. Supp. 2d 164, 197-98 (S.D.N.Y. 2003) (discussing "backcharge" in a situation where the contractor deducts from future payments to a sub-contractor amounts the sub-contractor was obligated to pay but instead the contractor was forced to absorb). As defendants point out, the term "backcharge" implies "an ongoing relationship between [a contractor and a subcontractor] such that [the contractor] could simply offset additional amounts due and owing to the [subcontractor]" by any amounts it was forced to absorb on behalf of the subcontractor. (Defs.' Reply at 5.) By contrast, plaintiff's allegations are purely that E&A reserved its right to bring a claim against SSP for the cost of the rejected NaturalPAVE and make no mention of offsetting any future payments to SSP.

Finally, plaintiff has not sufficiently alleged that the NaturalPAVE is a complex or custom-made product. Plaintiff cites the Complaint's references to the environmental advantages of NaturalPAVE and the environmentally friendly technology used to manufacture it in support of its argument that it has sufficiently alleged the product's complexity. (Sec. Amend. Compl. ¶ 12.) Additionally, it cites allegations that SSP was the only company that supplied

7

NaturalPAVE and E&A Restoration had to go to California to get it. (*Id.* ¶ 13.) Such allegations, however, lack details about the product itself sufficient to show that the NaturalPAVE is "a complex, integrated system." *Aetna Casualty & Surety Co. v. U.S. for the Use and Benefit of Gibson Steel Co.*, 382 F.2d 615, 618 (5th Cir. 1967).

In support of its assertion that NaturalPAVE is custom made, plaintiff alleges that SSP's "sales representative stated on a phone call that [SSP] generally custom fabricates NaturalPAVE orders and does not supply NaturalPAVE from an existing inventory." (Sec. Amend. Compl. ¶ 17.) Additionally, it alleges that "[a]ccording to [SSP's] proposal to E&A Restoration, '[t]here is a prepayment and lead time associated with accessing the special aggregate materials and preparation of the custom aggregate blend for this specific pavement mix formulation.' " (*Id.* ¶ 18.) In order to assess whether these allegations are sufficient, the Court looks to cases where courts have found that the customization of a product weighed in favor of finding a subcontractor relationship. For example, in *Miller Equipment Co. v. Colonial Steel Iron Co.*, 383 F.2d 669, 674 (4th Cir. 1967), the court found that the contract "called not for the mere supply of materials but for the custom fabrication of massive girders and their accessories, key and integral components of [a] bridge, designed and fabricated to mesh precisely in their final assembly on the job-site." Similarly, in *United States for the Use of Wellman Engineering Co. v. MSI Corp.*, 350 F.2d 285, 287 (2d Cir. 1965), the court found that a district court "properly placed the case on the subcontractor side of the line" where subcontractor produced a "[m]echanism built to the prime contract specifications, for the unique task of rapid movement of . . . heavy concrete roofs of missile launchers." By contrast, courts have found that products that conform to "relatively uncomplicated specifications" are not custom made. *See Conveyor Rental & Sales*, 981 F.2d at 453 (finding that gravel provider was materialman where gravel specifications were "merely

descriptive of what was to be furnished") (collecting cases). Here, despite its use of the word "custom" in its pleading, the plaintiff has not alleged any facts regarding the contract specifications that the NaturalPAVE was to meet, let alone, that such specifications were anything more than a relatively simple description of the type of pavement that was to be provided. Moreover, the allegations suggest that plaintiff's actions in preparing the NaturalPAVE amounted to a "mere supply of materials" and do not suggest that the pavement was "designed and fabricated to mesh precisely" with the Sagamore Hill Project. *Miller Equipment Co.*, 383 F.2d at 674. As a result, plaintiff has failed to sufficiently allege that this factor supports a finding that SSP was a subcontractor.

Furthermore, even assuming plaintiff's allegations that E&A Restoration and SSP had an agreement calling for a progressive system of fee payments in that SSP required "a 50% prepayment of the order for mobilization," (Sec. Amend. Compl. ¶ 19), and that according to the contract, "[t]he sales prices of the [NaturalPAVE] did not include any taxes," (*Id.* ¶ 20), weigh in favor of a subcontractor relationship, alone they are insufficient as a matter of law to support the conclusion that SSP was a subcontractor. *See Conveyor Rental & Sales*, 981 F.2d at 456 (dismissing Miller Act claim where "only factor tending to show a subcontractor relationship was . . . progressive, rather than fixed, form of payment"); *Gibson*, 382 F.2d at 618 (dismissing Miller Act claim where several factors weighed in favor of subcontractor relationship, including that materialman carried no inventory and was backcharged by general contractor). Moreover, plaintiff's conclusory allegation that the contract between SSP and E&A Restoration "did not look like [a] purchase order," (Sec. Amend. Compl. ¶ 21), is simply too vague to support a conclusion that SSP was a subcontractor. As a result, the Second Amended Complaint does not plausibly state a claim under the Miller Act, and that claim is dismissed.

### III.     *Plaintiff's Consignee Liability Claim*

Plaintiff's second claim states that "E&A Restoration is directly liable for Pacific Western's charges as the consignee (receiver) of goods under the default terms of a standard bill of lading." (Sec. Amend. Compl. ¶ 35.) Since this claim is based in state law, defendants argue that "upon dismissal of the first claim of the Complaint, the Court should decline to exercise supplemental jurisdiction over the second claim of the Complaint, and should instead dismiss such claim." (Defs.' Mem. in Opp'n at 8.) Having found that plaintiff's Miller Act claim is dismissed, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has discretion to exercise supplemental jurisdiction over plaintiff's state law claim, it declines to do so. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction.") Therefore, plaintiff's consignee liability claim is dismissed.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Plaintiff's claims are dismissed without prejudice. To the extent plaintiff seeks to replead, it must do so within thirty (30) days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
       June 10, 2015

/s/
Denis R. Hurley
Unites States District Judge