UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THE UNITED STATES FOR THE USE AND
BENEFIT OF PACIFIC WESTERN INC.
AND PACIFIC WESTERN INC.,

                        Plaintiffs,                **MEMORANDUM AND ORDER**
                                                                            14 CV 4977 (DRH) (AYS)

           - against -

LIBERTY MUTUAL INSURANCE COMPANY
and E & A RESTORATION INC.,

                        Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**SILVERBERG, P.C.**
Attorneys for Plaintiffs
320 Carleton Ave., Suite 6400
Central Islip, NY 11722
By:    Karl J. Silverberg, Esq.

**FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP**
Attorneys for Defendants
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
By:    John Michael Comiskey, Esq.

**HURLEY, Senior District Judge:**

       The United States for the Use and Benefit of Pacific Western Inc. and Pacific Western Inc. ("plaintiff" or "Pacific")[1] bring this action against Liberty Mutual Insurance Company ("Liberty Mutual") and E&A Restoration Inc. ("E&A"), (collectively "defendants") asserting a claim pursuant to 40 U.S.C. § 3131 *et seq.*, "the Miller Act," as well as a state law claim based

---

[1] Although the action is technically brought on behalf of the United States for the Use and Benefit of Pacific Western and Pacific Western, the Court will refer to plaintiff in the singular.

on consignee liability.[2] Presently before the Court is defendants' motion to dismiss these claims as alleged in plaintiff's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The Court assumes familiarity with the facts as set forth in its Order on defendants' motion to dismiss plaintiff's Second Amended Complaint (the "June Order") (DE 25, June 10, 2015). To the extent supplemental facts are relevant, they will be introduced as part of the discussion below.

## DISCUSSION

I. *Standard of Review for Motion to Dismiss*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)); *accord Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir. 2009). First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported

---

[2] Although in the TAC plaintiff asserted that there was subject matter jurisdiction over the consignee liability claim pursuant to the Carmack Amendment, 49 U.S.C. § 14706, in its opposition brief it "requests supplemental jurisdiction over this [claim] and concedes lack of direct subject matter jurisdiction," thereby acknowledging that it is purely a state law claim. (Pl.'s Mem. in Opp'n at 13.)

by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly,* 550 U.S. at 555. Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted); *see In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; accord *Harris*, 572 F.3d at 72.

## II. *Plaintiff's Miller Act Claim*

As in the previous complaint, Pacific Western claims in the TAC that it "is entitled to payment [for its shipping charges] from Liberty Mutual under the payment bond provided to E&A Restoration under the Miller Act . . . in the amount of $13,100 plus interest and attorneys' fees, as allowed for under Pacific Western's contract with Soil Stabilization [("SSP")]." (TAC ¶ 36.)

As noted in the Court's June Order, "[t]he Miller Act . . . requires a prime contractor of a federal project to furnish a payment bond to insure payment to individuals who supply labor and/or materials for federal projects." *U.S. for the Use and Benefit of Conveyor Rental & Sales*

3

*Co. v. Aetna Casualty & Surety Co.*, 981 F.2d 448, 450 (9th Cir. 1992) (internal quotation marks and citations omitted); *see also U.S. ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 351 (S.D.N.Y. 2014) ("The Miller Act requires any contractor performing on a 'contract of more than $100,000 ... for the construction, alteration, or repair of any public building or public work of the Federal Government' to furnish a 'payment bond with a surety satisfactory to the [contracting federal] officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.' 40 U.S.C. §§ 3131(a)-(b)."). "Although the Miller Act is to be construed liberally, it is limited by a proviso that the payment bond protects only those persons who have a contractual agreement with a prime contractor or subcontractor engaged in a federal project. Persons supplying labor or material to a mere materialman are not protected." *Conveyor Rental & Sales*, 981 F.2d at 450 (internal citations omitted).

Here, Pacific Western had a contractual relationship with SSP to transport the NaturalPAVE. However, it is entitled to protection under the Miller Act only if SSP was a subcontractor of E&A Restoration. Thus, the main issue in dispute is whether or not plaintiff has adequately alleged that SSP was a subcontractor of E&A Restoration, rather than a materialman. In the June Order, the Court found that plaintiff had not adequately alleged as such. Looking at the additional facts presented in the TAC, plaintiff still has not sufficiently alleged that SSP was a subcontractor such that plaintiff is entitled to Miller Act protection.

As with the first motion to dismiss, both parties cite a Ninth Circuit case, *United States for the Use and Benefit of Conveyor Rental & Sales Co. v. Aetna Casualty & Surety Co.*, 981 F.2d 448 (9th Cir. 1992) for the factors a court should consider in determining whether an entity is a subcontractor. In that case, the court found that the following factors weigh in favor of a subcontractor relationship:

4

> (1) the product supplied is custom fabricated; (2) the product supplied is a complex integrated system; (3) a close financial interrelationship exists between the companies; (4) a continuing relationship exists with the prime contractor as evidenced by the requirement of shop drawing approval by prime contractor or the requirement that the supplier's representative be on the job site; (5) the supplier is required to perform on site; (6) there is a contract for labor in addition to materials; (7) the term "subcontractor" is used in the agreement; (8) the materials supplied do not come from existing inventory; (9) the supplier's contract constitutes a substantial portion of the prime contract; (10) the supplier is required to furnish *all* the material of a particular type; (11) the supplier is required to post performance bond; (12) there is a backcharge for cost of correcting supplier's mistakes; and (13) there is system of progressive or proportionate fee payment.

981 F.2d at 451-52. On the other hand, the court noted that the following factors weigh in favor of a materialman relationship:

> (1) a purchase order form is used by the parties; (2) the materials come from preexisting inventory; (3) the item supplied is relatively simple in nature; (4) the contract is a small percentage of the total construction cost; and (5) sales tax is included in the contract price.

*Id*. at 452.

In attempting to establish the custom nature of the NaturalPAVE, plaintiff alleged in the prior complaint that SSP's "sales representative stated on a phone call that [SSP] generally custom fabricates NaturalPAVE orders and does not supply NaturalPAVE from an existing inventory." (Sec. Amend. Compl. ¶ 17.) Additionally, it alleged that "[a]ccording to [SSP's] proposal to E&A Restoration, '[t]here is a prepayment and lead time associated with accessing the special aggregate materials and preparation of the custom aggregate blend for this specific pavement mix formulation.' " (*Id*. ¶ 18.) The Court found that those allegations were not sufficient to suggest that the NaturalPAVE was custom made for purposes of the Miller Act. Now in addition to those facts, plaintiff alleges that "NaturalPAVE is customized pursuant to an architect's specification; the architect creates specifications for the NaturalPAVE's color and

5

texture; an architect designs the NaturalPAVE's color and texture to integrate the NaturalPAVE into the project's surrounding landscape composition, including local soil type and color, surrounding landscape vegetation, and architectural structures present at the site." (TAC ¶ 30(b).) Moreover, plaintiff alleges that "the specifications for the NaturalPAVE used at the Sagamore Hill Project called for [SSP] to create an architect's specified NaturalPAVE mix that met specific color and texture requirements for purposes of creating a unique NaturalPAVE design that would integrate into the distinct landscape and architectural features present at the Sagamore Hill National Historic Site." (*Id.* ¶ 31.)

These additional allegations, taken as true, however, do not support plaintiff's claim that SSP was a subcontractor. As defendants point out, the allegations suggest a situation similar to that in *Conveyor Rental & Sales Company*. In that case, the court found that gravel specifications were "relatively uncomplicated," "merely descriptive of what was to be furnished," and "necessary whether the supplier [was] a subcontractor or only a material supplier." *Id.* 981 F.2d at 453 (internal quotation marks and citation omitted). As a result, it found that the evidence presented tended to support a materialman relationship. Despite plaintiff's additional allegations, the simple color and texture specifications alleged here are dissimilar to the "highly intricate customized fabrications" found in cases where a subcontractor relationship was found. *Id.* (citing *Miller Equipment Co. v. Colonial Steel Iron Co.*, 383 F.2d 669, 674 (4th Cir. 1967) (where contract "called not for the mere supply of materials but for the custom fabrication of massive girders and their accessories, key and integral components of [a] bridge, designed and fabricated to mesh precisely in their final assembly on the job-site"); *U.S. for the Use of Wellman Engineering Co. v. MSI Corp.*, 350 F.2d 285, 287 (2d Cir. 1965) (finding that a district court "properly placed the case on the subcontractor side of the line" where

6

subcontractor produced a "[m]echanism built to the prime contract specifications, for the unique task of rapid movement of . . . heavy concrete roofs of missile launchers")).

Regarding the fifth subcontractor factor, the Court found that the previous complaint did not allege that anyone from SSP actually came to the site or the type of work performed on site. Plaintiff now attempts to rectify this in alleging that according to SSP's president, SSP "had a 'technical advisor' at the Sagamore Hill Project site for about one and [a] half days who provided guidance as necessary for the NaturalPAVE's installation." (TAC ¶ 30(c).) Thus, according to the TAC, some on site work was performed, however, plaintiff has not alleged that SSP was "required" to perform any work on site pursuant to the agreement with E&A or that there was any separate labor agreement between SSP and E&A.

Plaintiff has not provided any other new allegations suggesting that SSP is a subcontractor. Regarding plaintiff's allegations repeated from the previous complaint, for the same reasons discussed in the June Order, plaintiff has not sufficiently alleged that the NaturalPAVE is a complex product or that E&A back-charged SSP. Moreover, as noted in the June Order, even assuming as true plaintiff's allegations that E&A Restoration and SSP had an agreement calling for a progressive system of fee payments in that SSP required "a 50% prepayment of the order for mobilization," (TAC ¶ 19) and that according to the contract, "[t]he sales prices of the [NaturalPAVE] [did] not include any taxes," (*Id.* ¶ 20), these allegations are insufficient as a matter of law to support the conclusion that SSP was a subcontractor. *See Conveyor Rental & Sales*, 981 F.2d at 456 (dismissing Miller Act claim where "only factor tending to show a subcontractor relationship was . . . progressive, rather than fixed, form of payment"); *Aetna Casualty & Surety Co. v. U.S. for Use and Benefit of Gibson Steel Co.*, 382 F.2d 615, 618 (5th Cir. 1967) (dismissing Miller Act claim where several factors weighed in

7

favor of subcontractor relationship, including that materialman carried no inventory and was backcharged by general contractor). Moreover, plaintiff's conclusory allegation that the contract between SSP and E&A Restoration "did not look like [a] purchase order," (TAC ¶ 21), is simply too vague to support a conclusion that SSP was a subcontractor. As a result, the TAC does not plausibly state a claim under the Miller Act, and that claim is dismissed.[3]

### III. *Plaintiff's Consignee Liability Claim*

Having found that plaintiff's Miller Act claim is dismissed, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has discretion to exercise supplemental jurisdiction over plaintiff's state consignee liability claim, it declines to do so given the history of the case. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction.") Therefore, plaintiff's consignee liability claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted and plaintiff's claims are dismissed with prejudice to filing a fourth amended complaint in this Court. The clerk of the Court is directed to close this case.

S**O ORDERED.**

---

[3] Defendants also argue that plaintiff's Miller Act claim should be dismissed because the statute of limitations for such a claim, which is one year beginning to run on "the day on which the last of the labor was performed or material was supplied by the person bringing the action," 40 U.S.C. § 3133(b)(4), has expired. According to the TAC, Pacific's second and final delivery of NaturalPAVE occurred on September 6, 2013. Defendants argue that plaintiff's TAC filed on June 20, 2015 was untimely. In response, plaintiff argues that the TAC should be deemed timely pursuant to the doctrine of equitable tolling. However, given that the Court has already dismissed the Miller Act claim, it need not reach this issue.

Dated: Central Islip, New York
      May 5, 2016

                                                  /s/
                                    Denis R. Hurley
                                    Unites States District Judge